We have two consolidated cases next on the docket. They are case numbers 416-0365 and 416-0546. ISBA Mutual Insurance Company v. Rex Carr Law Firm. For the appellant we have Mr. Chambers. And for the appellee, Mr. Gates. You may proceed, Mr. Chambers. Morning, Your Honors. May it please the Court. Counsel, for the plaintiff appellant, Illinois State Bar Association Mutual Insurance Company, which I will refer to, if the Court pleases, as ISBA or ISBA Mutual, Robert Chambers, for that appellant. This is an appeal from a summary judgment entered by a judge just down the street in the Sangamon County Circuit Court. The standard of review, I think, is disputed. It will be de novo. And the Court has two issues in front of it by these consolidated appeals. The first is whether the circuit judge erroneously refused to rescind certain ISBA mutual policies. And if the Court decides or later determines that rescission was appropriately denied, then it gets to the question whether there is a duty to defend the insureds in a lawsuit now pending in St. Clair County filed by the Sittles. With respect to, we'll take rescission first. We're looking for a bright-line rule from this Court. that if an earlier policy is procured by misrepresentation, then a renewal policy, and each of them, is tainted, and the insured should not be permitted to benefit from its fraud. Fraud vitiates a contract. Each policy would be void. To hold that the discovery of an earlier fraud cannot be used to rescind, a subsequent policy allows an insured who committed a misrepresentation to get away with it. Counsel, let me ask you this. I mean, we're talking about policies, individual policies, and so it seems a stretch to say that a misrepresentation as to an earlier policy should be allowed to void a future policy where there's no misrepresentation made as to the procurement of that policy. And that, some would say, is the decision of the First District led by Justice Neville in the 2014 case of ISP and Mutual versus Brooks, Adams, and Tarullos. In that case, ISP and Mutual issued a policy in 2008 as to which there had been a misrepresentation. That was the contention. The 2009 policy, which was the renewal, had no misrepresentation. The claim is made in 2009. When ISP and Mutual got the claim, it looked back as it can, because Illinois does not prohibit post-claim underwriting, which is looking at a claim and then saying, oh, they knew about that claim, and they didn't tell us about it when the first policy was issued. The First District said they didn't hold about timing, Your Honor. What they held was there was no misrepresentation in 2008. Therefore, there was no basis for Judge Mason, now Justice Mason of the First District, to rescind the 2009 policy. Others look at that decision as saying if the misrepresentation occurs in 08, but you discover it after a renewal in 09, you can't claw back and say that taint carries forward, and the renewal policy should be rescinded. There is no court in Illinois that has recognized it. That's why we're asking this court for that rule. The First District held in Brooks, Adams, and Tarullos that it was not proper to rescind the 09 policy because there was no misrepresentation, not timing. The question on the initial application... Your suggestion is that it's a confused analysis of that case to say that you can't go back to a prior misrepresentation. Yes, because what the court held was there was no misrepresentation because the question on the original application said, in the last five years, has any member of the law firm... is there a claim against any member of the law firm? The answer was no, but they presented a lawsuit which had been... there was a lawsuit which had been filed within that five-year period, and the court took the position. I recall vividly Justice Pierce during the oral argument kept asking me, if you wanted to ask about lawsuits, why didn't you? You asked about claims. The opinion written by Justice Neville held a lawsuit's not a claim. Well, that's a remarkable conclusion. I'm not here to cast aspersions at that decision. We did that in a petition for rehearing. We did that in a leaf to appeal. It's still on the books, but the fact is, any reasonable lawyer, I would suggest to this court, would regard a lawsuit against him as the epitome of a claim. Even if the attorney believes it's frivolous? Pardon me? Even if the attorney believes it's frivolous? That shouldn't matter. A claim is a claim is a claim. A lawsuit still requires an insurance company to defend it at great expense, frivolous or not. That being said, we have a situation here where in 2008, on the renewal application, there was a question. Is any member of the firm aware of a circumstance, act, error, or omission which may give rise to a claim? Less than a year earlier, May 2007, a lawsuit against Bruce Carr and the law firm was dismissed as a result of intentional misconduct toward the court and failure to pay a $5,000 fine. The answer on that renewal application was misrepresentation. A reasonable lawyer who has his client's case dismissed because he refused to pay the $5,000 fine against him, pursuant to an order that said, if the fine is not paid on the first day of trial, the case will be dismissed with prejudice, is certainly aware of a potential claim when he doesn't pay the fine, the suit is dismissed, and no appeal is taken. Is this the instance where they continue to represent that person, though, even though the lawsuit was dismissed? The lawsuit was dismissed. They no longer represented that person. In fact, they didn't even, according to the lawsuit filed against Bruce Carr and the law firm, they didn't even tell the client the case had been dismissed. What I'm getting at is that case was dismissed. It wasn't reported on the renewal application. An 08-09 policy was issued. In 2009, it wasn't disclosed. That policy was renewed. But on the 2010 renewal application, there was a question. 15, any member of the firm subject to disciplinary complaints, grievances, requests for investigation, complaint to the ARDC. This was March 30, 2010. The answer, no. In September of 2009, which would have been within that 12-month period, Martinez, who had been the plaintiff in the dismissed case, filed a complaint with the Indiana Supreme Court Commission, which is that state's equivalent of the ARDC, against Bruce Carr, another lawyer from the Carr Law Firm, and the Carr Law Firm. So clearly, a complaint filed with a state equivalent, an Indiana equivalent of the ARDC, questions specifically any complaints with the ARDC, and the answer, no, is an unmistakable material misrepresentation. So now we have dismissal in 07, not reported in 08. The 08 policy renewed. The 09 policy renewed. Then in 2010, a renewal application, that policy gets renewed, even though the complaint with the Indiana Supreme Court Commission was not reported. This goes on. March 2011, the renewal for the 11-12 policy year. None of the things I've already described were disclosed to ISB and Mutual. Also not disclosed to ISB and Mutual was the Siddle claim. The Siddle case was dismissed in January of 10. Numerous motions for fees and sanctions were filed in March of 10. The second related case was dismissed in June of 10. And more motions for fees and costs, aggregating almost $3 million, were filed in July of 10. Not reported to ISB and Mutual about a potential claim on a 2011 renewal application. In fact, Siddle wasn't disclosed in 10, 11, or 12. Now, rescission in Illinois is statutory. We learned from the Supreme Court decision in ISB and Mutual versus Tuzolino and Turpinus that even if you're an innocent insurer, it doesn't matter. The standard is quite low. That is, if a material misrepresentation is made on an application, even if innocently made, it's sufficient to sustain rescission of the policy. Brooks Adamson's Rulers looked at it, that was pre-Tuzolino, they looked at it from the standpoint of not because it wasn't discovered, but because it wasn't a misrepresentation. So the fact that there was a nondisclosure in 2008 of something ISB and Mutual thought should have been disclosed, the policy gets renewed in 2009, a lawsuit is filed in 2009, and then they look back. It was not because of timing. It was because there had been no misrepresentation because the court was of the mind. A lawsuit, a question about were any claims made in the last five years did not include a lawsuit. So there was no misrepresentation. Now, we don't want a decision from this court that would act as a signal to applicants that they can lie on an application in secure coverage which they may not have otherwise obtained had they told the truth by concealing facts from the underwriter and disallow actuarial determinations to be made. There is no one-year limitation here. Section 154 is the touchstone of rescission in Illinois. It's statutory. The one-year limitation in Section 154 talks about policies in Section 143.13 of the Insurance Code. That's not a professional liability policy. That's an auto policy or a homeowner's policy or a personal or family-related policy. It doesn't apply to business policies. Now, as I said, this court's no stranger to that provision because it decided Standard Mutual versus Lay or Standard Mutual versus Jones where people decided when they answered a question about who lives with you, they forgot they had two kids. And one of the kids totals the car, but it was too late to bring the rescission suit because the policy had been renewed. In fact, I was told you're making the argument in the wrong form. Make it across the street at the General Assembly. So that one-year limitation doesn't apply to these policies. We have a situation where there's clearly misrepresentations in 08, policy renewed in 09 and 10, misrepresentations in 10, but the policy was renewed for 10 and 11 and 11 and 12, and it goes on. And if the court looks at this as a continuum of insurance coverage, if there were misrepresentations which would be sufficient had they been discovered immediately after the renewal policy was issued, such that the rescission suit could be brought, the policies would be gone. The fact is Illinois permits post-claim underwriting. It doesn't happen that way. It happens when a lawsuit comes in and then the insurance company looks back. Then they say, had we known this, we wouldn't have issued these policies. And our position is if there were, in fact, misrepresentations, they tainted those policies such that the subsequent policies shouldn't exist either. It's like a house of cards. It will come tumbling down. So for those reasons, we would ask the court to reverse the decision of the circuit court on the rescission issue. If, however, the court disagrees, then it has to face the issue as to the Siddle lawsuit against Bruce Carr, the late Rex Carr, and the Rex Carr law firm pending in St. Clair County down in Belvoir. This is a suit which seeks more than $2 million in attorney's fees entered as a sanction against the Siddles and the Carrs for a lawsuit they brought initially in the Southern District of Illinois, then transferred to the Middle District of Tennessee Federal District Court in Nashville. Both the Carrs and their clients, Bruce Siddle and his wife and their trust, were assessed with fees, sanctions, and penalties by the federal district judge. It began as a third-party complaint in federal court by the Siddles against the Carrs, but it was dismissed by the judge for the fact that it was filed without leave of court, and the district court referred to it as a suit for indemnity. It then gets filed in St. Clair County and seeks in excess of $2.15 million. The suit is couched in terms of malpractice, but this court must consider the totality of the allegations along with the pleadings that led to its filing. It's an indemnity suit for the imposition of attorney's fees as a sanction. You can slice right through it. Cast it as it is, it is a transparent attempt to plead into coverage. This is a concept which is endemic to the practice of insurance coverage law. You file a declaratory judgment action based on a certain set of circumstances. You join a tort plan. If you join a claimant, they see what your coverage position is, and then they remarkably amend their pleading. That's what happened here. At the time the suit was filed in St. Clair County, this declaratory judgment rescission suit had been on file for more than a year or two here in Springfield. This court dealt with the concept of transparent attempt to plead into coverage in Farmers v. Danner. Justice Neck, you were on that panel with Justice Turner, who wrote the opinion. Justice Polk, for her own reason, decided to dissent. But the fact is, you can't file a lawsuit, take a position, the insurance company files a coverage suit based on that position, see their position, and then amend. The Farmers case is an amazing example of that. That is a suit where kids are playing ball. The father goes onto somebody's property. The owner of that property decides, I don't want these people on my land, so he jumps into his pickup truck, drives down the lane at a great rate of speed, runs into the man who's standing between the front of the pickup truck and the fence, knocks him down with the truck, then gets out of his truck, goes to the back, gets a golf club, and beats the guy with it. That was filed as an intentional act case. We filed a complaint for declaratory judgment. They then said they had had to account for negligence, saying all of what I just described occurred negligently. Well, he beat him so bad with the golf club, he broke his nine iron. As I said, this court said you can't do that, and they upheld the judgment that had been entered for Farmers Auto Insurance Association. The suit we have now is unmistakably a suit to collect from the lawyers the sanctions awarded against the Sittles as part of what occurred in federal court in Nashville, Tennessee. Damages under the policy do not include sanctions, and they do not include fees paid or incurred by a claimant, such as the Sittles, or their injuries, which are in all or in part a consequence of those fees. To have insurance for sanctions is untenable if not directly against public policy. It's like allowing a thief to buy insurance so that when he's caught, the insurance company can pay for the property the thief stole. You can't do it. No insurance carrier should act as a surety when a party and its lawyers file a suit, which should not have seen the light of day. The Sittles seek from the cars liquidated damages. They're already assessed as sanctions and penalties in the federal court. They seek reimbursement of those sanctions. There is no coverage for sanctions. Under the Supreme Court decision in Pekin v. Wilson, this court is not constrained to look solely to the four corners of the Sittles complaint in St. Clair County. You can look at the total. Well, counsel, let me ask you this. What about the fact that the Sittles in their complaint, they're asking for damages including but not limited to the entry of a judgment against them in the amount for the sanctions? So it sounds like there may possibly be more than just the sanction amount. Right. What we are saying is what they are looking for are their expenses incurred or paid as a consequence of the fees, and that's not damage under the policy. But that's not what they say. Well, what we're saying is what they allege is the transparent attempt to plead into coverage. If they took those words out and all they said was we're seeking recovery of $2.159 million, then, Your Honor, I think would unanimously say so. They want to be reimbursed by an insurance company for the sanctions entered against them in the federal district court. We're not going to allow that. So they were aware of our position because our position had been on file for a significant amount of time before they refiled that third-party complaint as a lawsuit. That's where the court looks to the totality. You have to look to the pleadings that led to the entry of that judgment, and there's another reason. The other reason is this. We're dealing with a claims made and reported policy. For there to be coverage under that policy, the claim must be made against the insured and the insured must report it to the insurance company in the same policy period. For the reasons I described earlier, this claim was made as an incident or circumstance of which the insured was aware could lead to a lawsuit in 2010. They reported it in July of 2012. So it's not made and reported in the same policy period. So for those reasons, we're suggesting to the court that there is no duty to defend. If the policies aren't rescinded, then you have to get to the duty to defend the civil suit. We suggest there is no duty to defend, and we'd ask the court to enforce that as well. Any questions? I don't see any at this time. I'll save my remaining time for rebuttal. You will have time for rebuttal. Thank you. Mr. Gates? Thank you. Your Honors, let me start with the last argument that was made by SBAM, and that is that the lawsuit by the Sittles is actually a suit for indemnity. There's really just absolutely nothing to that argument. They found the Sittles federal complaint had the word indemnity in a footnote, and they grabbed onto that. There is nothing in any of the pleadings that suggests that's what they're asking for. Mr. Chambers argued that the Sittles pled into coverage with their second complaint, the state court case in St. Clair County. The fact of the matter is the lawsuit has always been about professional malpractice. The lawsuit that was filed in federal court and then was dismissed, and then the second lawsuit, the replacement in St. Clair County, it's always been about malpractice. This is not an indemnity claim. An indemnity claim is a completely different thing. It's generally an issue of contract law. If I get sued, you indemnify me. This lawsuit that was brought by them says in explicit language over and over and over that the lawsuit is based upon the professional duty that was owed by Kars to the Sittles. It says it in three or four paragraphs. You owed us this duty of good care, professional conduct, blah, blah, blah. You breached that duty, and as a result, we suffered these damages. That's the issue here. Everybody in first-year law school understands the difference between liability and damages. Liability is what we're really talking about here. What is the liability that is imposed against the Kars? It's for professional negligence. There is no other way to read this. They're saying the Sittles said in their lawsuit, you had an obligation to represent us in this lawsuit in a competent manner. You screwed it up. That's where liability arises. Then we come to damages. The damages in this case are set by what was suffered by the Sittles. That's what damages in a malpractice case always is. If I'm representing someone, if I'm defending someone, and that client loses because of my malpractice, and they end up with a judgment against them because of my bad acts, that's what damages are in a malpractice case. What did my client suffer? In this instance, it's very clear what they suffered. The Sittles suffered an award of $2 million, or whatever it is, based upon a fee-shifting provision in the contract that was in the underlying lawsuit. It had nothing to do with indemnity. It had to do with, if you lose this lawsuit for me, this was a contract case, if you lose this lawsuit against me, I'm going to get hit with attorney's fees. You screwed it up. I lost this lawsuit against me. I got hit for a fee-shifting. It wasn't penalties. Mr. Chambers kept using the phrase sanctions. It's not sanctions. There's no argument that it's sanctions. A car was sanctioned. Rex Carr and his law firm was sanctioned for violating a duty owed to the court. The amount of money that the Sittles were hit with was not a violation of a duty owed to the court. They're not sanctions. It's a violation of the duty set forth in that contract. The contract that was the heart of that lawsuit was, if you lose, you'll pay my fees. It's not sanctions. It's Federal Rule 54, award of fees. The damages are the proximate result of the malpractice. It's not indemnity. Nowhere is it indemnity. It is a measure of damages. It is what the defendant got hammered for because of the malpractice of the cars. That's all it is. That's why you buy insurance, is to be protected from exactly that. Now, going back to the first argument that was made, it's clear from the briefs, and now it's more clear from Mr. Chemer's argument, that this whole appeal is really, they want a second chance at Brooks. They lost the Brooks case. And when I say they, I mean ISBAM and I mean Mr. Chemer's. They lost that case. They lost it under petition for rehearing. They didn't get it. The PLA was denied. This is another chance to litigate that same issue. Brooks was nothing magical. Brooks was based upon two things. It was based upon Section 154 of the Insurance Code. It was based upon an interpretation of the contract that issued. It was not some common-law, judge-created area of law. It was based upon a statute and a contract. And there really was no other way to decide that case. And I will point out, by the way, Brooks was decided in, I think, December of 2014, based upon an interpretation of Section 154. The legislature has not seen fit to modify that. As Mr. Chemer seems to be arguing, the Brooks case, in his view, was a misreading of Section 154. Well, as we all know, if that happens, the legislature has the opportunity to change it. They have not in the three years that Brooks has been law. However, putting that aside, one of the arguments or one of the comments that Your Honor made was that these are separate policies. Mr. Chemer makes the claim, I think his words were, it's a continuum of coverage. Those are the phrases he uses. The policy that was issued in 2008 is the same as the policy issued in 2013. It's a continuum of coverage. That's just wrong. It's completely wrong. In fact, if it was true, I would have used that argument in a hundred cases. I would have gone back and used the policy language from the policy I had five years ago because I liked that better than the policy I've got today. Hence, all of the continuum of coverage. Every policy stands alone. As we all know who have car insurance and house insurance, your policies change. The declarations paid changes. The premiums change. What's covered and not covered changes. The policy evolves over time. Each policy on every given year is a new policy. No way would ISBAM let me attempt to enforce a policy that was issued in 2008 on a claim that was made in 2012. They don't let me do that. It's a unique, distinct policy. I think the best example, the best way to analyze that is, let's assume that the cars have been insured by Pekin or by somebody else or Pearl and they decide in 2012 to come to ISBAM and say, hey, I want insurance. They would have gotten the exact same application. And that application, using their own words, they wrote it, says, are you aware of any claims in the last 12 months? Cars would have said no. They would have gotten the insurance. It's a unique, distinct policy. The fact that if they had been sued back in 2008 and had lied to Pearl is irrelevant to this policy. They stand alone. And Brooks didn't create new law. Brooks just did what is perfectly logical. First, they look at Section 154 and say the legislature recognized that insurance companies have a propensity to raise small, minor, or weird defenses to policies and then completely void them. You can't do that anymore. You have to follow the statute. And then, just as importantly, it looked at the contract that was drafted by the insurance company that said it has a look-back period. It doesn't say in the application, have you ever been sued? Have you ever lost your license? It says if you had been sued or lost your license in one year. They could change that very easily. The application could be different. It's not, so therefore Brooks was properly decided. At the time of the 2008 policy, did the car firm know that this case that ended up in Kentucky, that they had been sanctioned, they meaning the firm or the lawyer, had been sanctioned and the case had been dismissed? No. I think the dates were 2010 and 2011 is when the federal court down in Kentucky finally ruled on the motions for sanctions against the attorney for violations of duty of court. So it was after that date. Remember, here's what, if I can answer your question, what I think you're asking. The four things that ISBA says should have put us on notice are the dismissal of the lawsuit. It's in there pleading. I'm not making this up. It's the fact that the lawsuit was dismissed. It was the dismissal of the federal lawsuit in January of 2010. The second one is that there was a counterclaim filed by the plaintiffs, excuse me, the defendants against the settles filed in 2010. That there was a motion for sanctions filed against the defendants in 2010. And that they called the dismissal of the second suit, which is really not a dismissal of the second suit. It was just a harder dismissal. I think the judge down there hadn't quite gotten the pound of flesh he wanted, so he issued another order really dismissing it. So those are the things that the ISBA says should have put us on notice. Should have put you on notice that you needed to describe that in your filing of the year or that. Right. And I think what's interesting, and I'm glad you asked this question, because there is a huge distinction between this case and all of the other cases that the ISBA and Mutual has been involved in on this issue, had you lied in your application. You should have known you had a claim. In every one of those other cases, what is at issue is what did the client tell the lawyer? Was the client firm enough in saying, man, I think you've messed this up? Did his letter say, hey, I think you screwed up? Or did he say, hey, I'm going to sue you? It's all that parsing of that language. We don't even have that here. There is not one single piece of evidence of a correspondence or a phone call or a memo between the client and Rex or Bruce Carr saying, I think you screwed this up. In fact, the testimony, the only evidence you have is the deposition of Mr. until June of 2012 when I filed a lawsuit against him. There is no other case out there where an insurance company, a malpractice insurance company says the lawyer should have known that a claim had been made or was going to be made against him based upon extrinsic circumstantial evidence. Every other case is analyzing the words and comments made by the actual client to his lawyer. One case, we're going to go to war. The second case is, I want my file and I'm going to take it to another lawyer. Courts are trying to figure out, is that enough for a reasonable lawyer to say, oh, man, you're going to get sued? I get that. There's an issue there. We're not even there. At no point ever up until they filed a lawsuit did the citils say, we're coming after you. What they're asking this court to do is to impose on lawyers the burden of looking at a loss or a result in a case and deciding, man, I may have screwed that up. Or, boy, that didn't turn out the way it should have. I wonder if it was my malpractice. Or, I wonder if the client's mad at me. That is an unreasonable burden. I have no idea. As a litigant, representing a client, yeah, you lose cases. It happens. When does it become a loss that you think has to be reported? It doesn't, in my opinion, until the client says, I got a claim against you. Well, does that mean the cases that you discuss also suggest that that's the only way the lawyer could know? Is client dissatisfaction the only test? That's the only test that's ever been in any of the reported cases. There's not one reported case where the court looks at it and goes, you should have known just from kind of extrinsic evidence. It's always, was the client firm enough in his statements of, you screwed up? That's all there is. There is never a case that says, you should have known just because you're a You screwed that case up. There isn't one like that, and there can't be one like that. So if you blow the statute of limitations that the client's not smart enough to know that that was the cause of them not getting to go to court, or if the client chooses for whatever reason, I'm letting that one go. And that happens. There's all kinds of reported cases, I wish I could cite them to you, where the client says, yeah, that was a flyer. I knew it was a flyer. I didn't think it was a good case. We lost the statute of limitations. We're done. I'm out. Yeah, that matters. That has to be some indication from the client that I'm going to sue you. Yeah, I don't disagree. I'm just inquiring whether there's anything else other than the client's dissatisfaction. Yeah, because that's what insurance is. I'm not insuring against my screw-ups. I'm insuring against being sued for my screw-ups. That's a big difference. I don't have insurance for just making a mistake. They're asking the lawyer subjectively, so how can it just be based on the client? Well, it's a subjective... It's like they're seeking the lawyer's opinion on, have you done something that may give someone a claim against you? Right. Someone a claim against you. It's based upon, do you believe that person's going to claim? It's not, did you make a mistake? I think that's the big difference. I'm saying, I know I lost a case. Maybe I lost a case because I really did screw something up, but the client doesn't know it. That happens. Do I think that's something I need to disclose? No, I'm not going to get sued. I know I'm not going to get sued. Even though I screwed up, I know I'm not going to... Does it lead to something that I thought could get sued? Yeah. I think it's asking for lawyers, and I think this is a perfect example. I understand, I get it, because I'm a lawyer. I've got insurance. I get it. I don't like to say, I lose cases all the time, but if you're in litigation, you lose cases. When do you decide it's a hard loss? It's a loss because you screwed up? Every case I lose. Every case. I go home, and I go, I screwed that up. It was my fault. I could have done a better job. But in the example that Justice Connick provided, you blew the statute of limitations, and that's pretty clear, and you're saying that there would be no obligation to report that as someone having a potential claim against you. I think that's absolutely true, because there are many scenarios where you would blow the statute of limitations that doesn't necessarily mean you're going to get sued. In fact, it doesn't at all mean you're going to get sued. But is that what they're asking? Are you going to get sued? Or are they asking, are you potentially going to get sued? No, they're asking, do you believe that you're going to get sued? That's it. So, yes, the potential part is, do you believe that you're going to get sued? It's subjective. I keep thinking of the client that sits for six months and goes and talks to their family lawyer and says, you know, I had this case, and I thought it was a good case, and I hired this guy, and something happened to it. I just feel uncomfortable about it. And the client or the family lawyer looks at it and says, I know very little about litigation, but I know that there was a statute of limitations in your lawsuit that you filed one time. And then the insurance company asks, as they did here, should you anticipate that until, what's the statute of limitations on professional malpractice? Two. So for the next two years, should you worry about that case until, I know you worry about that. Obviously, the implication is, if you're worried about it, your insurer may want to know about it. Right. And I guess we're getting far afield because it's an interesting argument. I think there are situations where clearly, even though you haven't been sued, even though you haven't heard from the client, yes, I think there are certain situations where absolutely you can make the decision, I need to disclose this, even though the client hasn't contacted you. So perhaps in an absolute black and white, I just blew the statute of limitations. Yeah, maybe you have to. But I think there are a lot of cases where you blow the statute of limitations where it's not clear that you're going to get sued.  And you bust your hand and you can't get it. That's not malpractice. You just blew it. So I don't think it's a bright line either way, but I think there are scenarios where, yeah, even if you haven't heard from the client, maybe you ought to disclose it. What we have here is not that. What we have here is a situation where they took a very difficult case. Everybody concedes the depositions are clear. Everybody knew this is a tough case. In fact, the depositions will show that the car firm retained a separate law firm to take a look at their own case and say, is this worth bringing? What's the problem with it? It's kind of a unique, bizarre way of doing business. But they did. It's a tough case. They explained it to the settles and they said, I don't know, this is tough. They filed a lawsuit. Tough case. They lost it and they lost it big. The judge was very critical of them. But based upon the totality of the relationship between the settles, what they knew before the lawsuit was filed and what they knew when they lost it, the cars were absolutely entitled to believe there's no lawsuit here. There's no malpractice here. There's not going to be a claim against the settles. It has to be conclusive on this issue that the settles themselves said, I didn't see any malpractice here until a month before I filed the lawsuit in 2012. That has to mean something that they believed that they understood this is a tough case. They understood the cars were going out on a limb. They understood that if they lose, they're going to get nailed for attorney's fees. Those things all happened. That doesn't mean that there was something that needed to be reported. Thank you very much. I want to ask one more question. If you are ultra-cautious and you disclose things that under your position you might not need to disclose, but you want to be transparent, that's going to change the issuance of the policy or it's going to change the premium rate? Or is the ISBA or whoever going to evaluate and say, we kind of agree. We don't think we have very much exposure on that. That's probably not going to be filed. They go ahead and issue the policy. Does that kind of thing occur? Should it occur? Well, this is the horror of the record. Yeah, but I'm asking you about policy. It does happen. It absolutely happens that the insurance companies take the position that whatever you've disclosed affects your insurability. Even if it's a frivolous claim, even if you shouldn't have even told me about it, the fact that I know it changes. Because otherwise, this argument is, was the lie materially affecting your insurability? So everything affects it. As a lawyer, you make that balance because you know, okay, if I disclose the policy, they're going to either raise my rates, they're going to increase my deductible, or they're going to refuse to issue the policy at all. You've got to make that decision. And the kicker is, to answer your question fully, that is within the complete control of the insurance company. If they want to make it such that you have to disclose every nickel-dime problem on your application, they should make it that way. Part of the reason you don't disclose the nickel-dime is because you know that it's under your deductible anyway, whatever you like to pay. Exactly. Right. You're absolutely right. Okay. Thank you, counsel. Thank you. Any rebuttal, Mr. Chimmers? Thank you. Mr. Gates told this court in response to your question, Justice Nectar, he's not insuring his screw-up, he's insuring himself for a lawsuit. That's an amazing answer. It's an amazing answer because, if you, to use your hypothetical, you blow the statute of limitations, yet you don't think your client knows you blew the statute of limitations. You report it to the insurance company as a potential claim because you have an obligation to do so. Why do you do that? Because if it's 2017 and you report that you blew the statute of limitations in a case that got dismissed May 9, 2017, if your policy's renewed and you're going to tell them, if you don't tell them, but you're sued next year, and they go back and look, the order was entered May 9. It was entered in the 2017 policy year, but you didn't tell us. You had prior knowledge. There's no coverage. That's why you report potential claims. Justice White, you asked about that. Yes, you report potential claims. A policy applies to a claim which is a demand for money or services for the filing of a suit or arbitration. It is also an incident or circumstance of which the insured has knowledge that may result in a demand against the insured that seeks damages arising out of a wrongful act. So if you think about it, you should be smarter than your client. You blew the statute of limitations. The client doesn't know. The client goes to the family lawyer six months and says, how did you do on that accident claim you had? Oh, I haven't heard from my lawyer. Then somebody checks the court file. They find out it was dismissed. You have a claim. But if you don't tell the insurance company about a potential claim now, then when you're sued next year, there's no coverage. That's why you report the claims. What the insurance company does, and I think it's almost myopic to think that just because you report a potential claim, that has an impact on premium, deductible, or whatever. It doesn't. What it does, you already have a policy. And all you're doing is telling them, I have a potential claim. That way, if you're sued next year under a claims-made policy, it relates back to when you reported it. That's what the policy says. Justice Neck, you also asked a question about, I think you said Kentucky, and you talk about 08 dismissal. That was actually the Indiana case. And that order says the court grants, and it's at page 16 of our opening brief, the court grants the defendant's motion to dismiss due to the intentional misrepresentation by counsel for plaintiff and for failure of counsel for plaintiff to follow orders previously issued by the court, one of which was in February of that year and imposed a $5,000 sanction. Now, I think any reasonable lawyer who is on the wrong end of that order would think a potential claim is in the offing. And it was a lawsuit for malpractice and a complaint with the ARDC equivalent in Indiana. There was a question about what the civil suit was. Judge Trower's order of March 26, 2013, which is exhibit CC to the complaint that we filed, says at page 68, this is a 70-page order of the district court, quote, also, the Sittles filed a third-party complaint against Bruce Rexcar and the Rexcar law firm purporting to demand indemnification from the cars against the court's Rule 54 awards here. Indemnification for $2.159 million. That's not malpractice. That is indemnification for the court's award under Federal Rule 54. We talked about Brooks, Adams, and Trulis. This is not a second bite. This court's not bound by what the first district decided. In fact, the other divisions, five other divisions in the first district aren't bound by what this court decided in Brooks, Adams, and Trulis. They held, quote, and this is paragraph 24 of 14.1.132608, because the ISBA showed no misrepresentation of the application for the 09 policy and it did not present any evidence concerning any other statutory grounds for avoiding the policy, the code required the ISBA to honor its commitments to Brooks, Adams, and Trulis under the 09 policy. In other words, nothing wrong with the 09 policy, except it was issued as a renewal of a policy that we said was tainted by misrepresentation, which this panel said wasn't, because the question was about claims. They didn't disclose a lawsuit, but they held a lawsuit was not a claim. You're out of time, counsel. We'd ask the court to reverse. Thank you. We'll take the matter under advisement and be in recess until the next case.